AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

**FILED**

NOV 1 0 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25-mj-971-SH |
| | ) | |
| Andres Avila | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ November 9, 2025 _____ in the county of _____ Tulsa _____ in the

Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(5)(A) and 924 (a)(8) | Alien Unlawfully in the United States in Possession of a Firearm and Ammunition |
| 18 U.S.C. § 933(a) and (b) | Trafficking in Firearms |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
JONAH ROOP    Digitally signed by JONAH ROOP
Date: 2025.11.10 17:24:26 -06'00'
*Complainant's signature*

_____
Special Agent Jonah Roop, ATF
*Printed name and title*

Sworn to before me by phone.

Date: 11/10/25

_____
*Judge's signature*

City and state: _____ Tulsa, OK _____

_____
Susan E. Huntsman, United States Magistrate Judge
*Printed name and title*

**Affidavit in Support of an Arrest Warrant
in the Northern District of Oklahoma**

I, Jonah Roop, being duly sworn under oath, do hereby depose and state:

**Introduction and Agent Background**

1. Your Affiant has been employed as a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Tulsa, Oklahoma since 2023. I am currently assigned to the ATF Dallas Field Division, Tulsa Field Office. My duties with ATF include, but are not limited to, the investigation and enforcement of the illegal use, possession, and trafficking of firearms. I also investigate criminal organizations, gangs, arson, and the illegal possession and use of explosives.

2. I have been an Intelligence Officer in the United States Air Force since May 2018. My duties as an Air Force Intelligence Officer have included researching and communicating classified intelligence to inform worldwide operations. I primarily worked with the Air Force Special Operations Command under United States Special Operations Command. As a part of this organization, I utilized the full spectrum of intelligence to identify and locate threats to national security. I then provided that information to individuals who prosecuted those targets in a manner most advantageous to the policies of the United States. In many instances this led to the execution of missions directed by the President of the United States. I hold a Bachelor of Science degree in Geospatial Science and a Master of Security Studies in Intelligence and Analysis.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents and evidence related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each and every fact I, or others, have learned during the course of this investigation.

4. It is my belief that Andres AVILA, DOB: xx-xx-1976, has violated Title 18 U.S.C. §§ 922(g)(5)(A), Alien Unlawfully in the United States in Possession of a Firearm or Ammunition, and Title 18 U.S.C. §§ 933, Trafficking in Firearms.

### Jurisdiction

5. "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it." Fed. R. Crim. P. 4(a).

6. The requested arrest warrant is related to the following violations of federal law:

- **Title 18 U.S.C. § 922(g)(5)(A)** – It shall be unlawful for any person – who, being an alien – is illegally or unlawfully in the United States – to ship or transport in interstate or foreign commerce, or possess in or affecting

commerce, any firearm or ammunition or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

- **Title 18 U.S.C. § 933** – It shall be unlawful for any person to – (1) ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony (as defined in section 932(a)); (2) receive from another person any firearm in or otherwise affecting interstate or foreign commerce, if the recipient knows or has reasonable cause to believe that such receipt would constitute a felony; or (3) attempt or conspire to commit the conduct described in paragraph (1) or (2).

7. Venue is proper because the offenses described in this affidavit occurred within the Northern District of Oklahoma. Fed R. Crim. P. 18.

### Firearm Offenses Background

8. "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921(a)(3).

9. "The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A).

10. In my training and experience, one way in which prohibited persons typically gain access to firearms is through straw purchases. The straw purchase of a firearm is done when a prohibited person, such as a person under indictment, enlists the help of a non-prohibited person, such as a non-convicted felon or person under indictment, to purchase a firearm in a legal manner such as a purchase from a federal firearms licensed dealer (FFL). When the non-prohibited purchaser or "straw purchaser" purchases the firearm, they fill out paperwork (Form 4473) and state that they are buying the firearm for themselves. It is common for the straw purchaser of the firearm to be related to the presumed or soon to be illegal possessor of the firearm.

11. Through my training and experience, I am familiar with how ammunition is packaged for sale at retail establishments. Based on my training and experience in and around firearms, I know that retailers typically sell pistol ammunition in quantities of 20, 25 and 50 – and also in larger quantities in excess of 50 rounds.

12. Investigative databases used by law enforcement to conduct person searches, find addresses, phone numbers and other information include Accurint, Clear, Leads Online, and TLO. These databases contain a variety of information such names, addresses, phone numbers, and associates to identify an individual and details about that individual to aid in investigations.

## Probable Cause

13. On November 8, 2025, ATF assisted Homeland Security Investigations (HSI) with an operation targeting suspected straw purchasers and firearms traffickers at a gun show in the Northern District of Oklahoma after receiving information that this illicit activity had occurred at previous shows.

14. Agents saw two individuals, later identified as **Andres AVILA and Anthony AVILA ("Andres" and "Anthony")**, engage in activity consistent with straw purchasing and firearms trafficking. Investigators later learned that Andres is Anthony's father. Andres is unlawfully in the United States. Anthony is a citizen of the United States. Their activity is summarized below.

   a. Andres and Anthony were purchasing firearms only from private sellers. This practice allows individuals to avoid background checks and paperwork, which in turn makes it difficult for law enforcement to identify the individual who purchased a firearm should it later be recovered.

   b. Andres and Anthony were only paying with cash. When paying for firearms, both individuals produced large quantities of $100.00 bills. Cash transactions also make it difficult for law enforcement to identify the individual who purchased a firearm should it later be recovered because there is no electronic record of the transaction.

   c. Andres frequently spoke on his cellular telephone while looking at and purchasing firearms. This is indicative of the purchaser inquiring of the

individual on the other end of the line as to what firearms that
individual desires. This behavior often foreshadows a potential straw
purchase.

15. On one occasion, agents observed Anthony hand cash to Andres, who
immediately gave the cash to a seller in exchange for a firearm. On another occasion,
agents observed Anthony hand cash to a seller, after which Andres received a firearm
from the seller and put it into Anthony's backpack. On yet another occasion, agents
observed Andres on the phone, taking pictures of firearms, paying cash for firearms,
and placing them in Anthony's backpack. Andres and Anthony were constantly
observed working together to procure firearms, and there is probable cause to believe
that Anthony knew or had reason to know that Andres, his father, was unlawfully in
the United States and prohibited from possessing firearms.

16. After purchasing a firearm, Andres and Anthony placed the firearm in the one
of the large backpacks they were each carrying. After filling up their backpacks with
firearms, Andres and Anthony walked to a specific vendor's booth, retrieved two
large totes from beneath one of the booth's tables, and unloaded the firearms from
their backpacks into the totes. Agents observed Andres and Anthony do this at least
two separate times. Subsequent investigation revealed that Andres and Anthony
spent at least six and a half hours at the gun show that day.

17. Agents observed Andres and Anthony get picked up from the show in a
maroon SUV. When they were picked up, Andres and Anthony were wearing the
backpacks they were seen using to store firearms. Utilizing the Flock camera system,

I identified the maroon SUV as a Toyota Rav 4 bearing Texas license plate (LP) SKY7956 ("Target Vehicle"). After querying the LP, I learned it was registered to an individual with the initials **F.H.A.**, at 9014 Tanager Street, Houston, Texas 77036. Utilizing available law enforcement databases, I discovered that Andres and Anthony are also associated with that address.

18. Upon reviewing Andres' criminal history, I found he was previously charged with Alien Inadmissibility under Section 212 on November 28, 2019. This prompted me to contact Enforcement and Removal Operations (ERO), which informed me that Andres was not in the United States legally and thus could not receive or possess firearms.

19. On November 9, 2025, ATF and HSI agents located the Target Vehicle at an Embassy Suites located at 3332 South 79th East Avenue, Tulsa, Oklahoma 74145, which is within the Northern District of Oklahoma. Agents observed Andres, Anthony, and three previously unknown females load luggage from the hotel into the Target Vehicle and drive away. One of the females was later identified as **M.H.A.**, who is Anthony's mother and Andre's wife. After contacting ERO, I learned that M.H.A. is not in the United States legally. The other two females were also identified but were not material to this investigation.

20. Agents followed the Target Vehicle until the Oklahoma Highway Patrol (OHP) arrived on scene and conducted a traffic stop near the gun show. In the vehicle, officers located a box marked "1000 RD 9mm Bulk," "$269.99," and "Sale 1000 RD $269.99 9mm," which contained a large quantity of ammunition. After

being read their Miranda Rights, Andres and Anthony invoked their right to an attorney. After being read her Miranda Rights, M.H.A. spoke to agents but did not provide any pertinent information. However, M.H.A. gave consent for her cellular telephone to be searched, which revealed GPS directions to the location of the gun show.

21. While the above interviews were taking place, other agents interviewed the individuals at whose booth Andres and Anthony were storing the firearms they purchased the day before. These individuals were identified as **R.G.** and **M.S.** After being told they could leave at any time and that they didn't have to answer any questions, they agreed to speak with agents. When asked about the firearms being kept under one of the booth's tables, R.G. stated they belonged to two individuals he knew. When told one of those individuals was not in the United States legally and therefore could not receive or possess firearms, R.G. abandoned the firearms, seventy-eight firearms in total. One of those firearms was later identified as a Colt King Cobra .357 magnum revolver with a white string attached to the trigger guard. There was nothing attached to the white string.

22. R.G. told agents he first met Andres and Anthony approximately one year before when they began frequenting a pawn shop that he owned with M.S. in Houston, Texas, to purchase firearm magazines. When Andres and Anthony made purchases at the pawn shop, they only paid in cash. When Andres and Anthony learned R.G. would be attending the Tulsa gun show, they paid him fifty dollars each for vendor passes to the show. These passes cost twenty-five dollars apiece and

give individuals early access to the show and identify them as vendors rather than attendees. R.G. stated Andres and Anthony bought the totes in which they stored the firearms. R.G. also stated Andres and Anthony were supposed to return to the show that day to retrieve the firearms.

23. Andres, Anthony, and M.H.A. were all arrested and transported to the David L. Moss (DLM) Criminal Justice Center. While being searched at DLM, a white paper tag reading "Colt King Cobra 357 Magnum $895$^{00}$ New!" was found on Anthony's person. The tag had an eyelet that had clearly been torn as if the tag had been ripped off the sting to which it was attached.

24. On November 10, 2025, a nexus expert observed the Colt King Cobra .357 magnum revolver and determined it was suspected to have traveled in or affected interstate and/or foreign commerce. An official nexus examination will be conducted.

### <u>CONCLUSION</u>

Based on the information set forth in this affidavit, I submit there is probable cause to believe that **Andres AVILA** has violated Title 18 U.S.C. §§ 922(g)(5)(A) (Alien Unlawfully in the United States in Possession of a Firearm or Ammunition), and that **Andres and Anthony AVILA** have violated Title 18 U.S.C. §§ 933 (Trafficking in Firearms).

Respectfully submitted,

JONAH ROOP Digitally signed by JONAH ROOP
Date: 2025.11.10 17:27:19 -06'00'

_____
Jonah Roop
Special Agent
ATF

Subscribed and sworn via phone on the 10th day of November 2025.

_____
SUSAN E. HUNTSMAN
UNITED STATES MAGISTRATE JUDGE